UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


Alyce Till,

        Plaintiff,

v.

Spectrum Juvenile Justice Services,

        Defendant.

_____/

Case No. 10-11905

Honorable Nancy G. Edmunds


**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [17]**


Plaintiff Alyce Till ("Till") filed this action against Defendant Spectrum Juvenile Justice Services ("Spectrum"), alleging the following in her First Amended Complaint:

(1) Disability discrimination under the Americans with Disability Act ("ADA"), 42 USC § 12101, *et seq.* (Count VII) and the Person's with Disabilities Civil Rights Act ("PWDCRA"), Mich. Comp. Laws §§ 37.1201 *et seq.* (Count IV);

(2) Violation of the Family Medical Leave Act ("FMLA"), 29 USC § 2601, *et seq.* (Count I);

(3) Sex discrimination under 42 U.S.C. § 2000e-2(a)(1) ("Title VII") (Count VI) and Michigan's Elliott-Larsen Civil Rights Act ("ELCRA"), Mich. Comp. Laws §§ 37.2101, *et seq.* (Count III); and

1

(4)   Age discrimination under the Age Discrimination in Employment Act ("ADEA"), 29

USC § 621, *et seq.* (Count V) and the ELCRA (Count II).

This matter comes before the Court on Spectrum's motion for summary judgment.  For the reasons set forth below, Spectrum's motion is DENIED as to Till's claims of disability discrimination under the ADA and PWDCRA (Counts VII and IV) and claim of FMLA violations (Count I), and GRANTED as to Till's claims of sex discrimination under Title VII and the ELCRA (Counts VI and III) and claims of age discrimination under the ADEA and ELCRA (Counts V and II).

**I.   Facts**

**A.   Background**

Spectrum is a non-profit agency that provides residential treatment and rehabilitation services to young criminal offenders.  In 2000, Spectrum hired Till, now a 56 year old African American female, as a security officer.  In 2005, Till was promoted to Security Supervisor at Spectrum's Calumet facility, and was transferred in 2008 to Spectrum's Lincoln Center facility.

**B.   2007 Suspension of Till**

On July 9, 2007, Till got into an argument with a subordinate male security officer and told him to quit "acting like a girl."  Spectrum suspended Till for one day for violating its Prohibited Conduct Policy (Def.'s Ex. A, 10/01/2000 Personnel Handbook, Prohibited Conduct at 93) and issued Till a Disciplinary Action Plan and Corrective Action Plan which stated that further violation of company policies could lead to further disciplinary action.  (Def.'s Ex. B, Till 07/09/2007 Disciplinary and Corrective Action Plan).

2

### C.      2009 Incident with Katherine Ferguson and Investigation

Katherine Ferguson, a white female, is a security officer who worked with Till at Spectrum.  In September 2009, Ferguson filed a complaint against several Spectrum employees, including Till, alleging that they made racist comments about her behind her back.  Spectrum Human Resources Administrator Larry Price conducted an investigation into the matter.  (Def.'s Ex. C, 2009 Investigation Report).  As part of the investigation, Spectrum employee Lisa Jones accused Till of treating Ferguson "horribly" and calling her a "white bitch" and "hoe."  (*Id.*).  Jones later declared that Till referred to Ferguson as a "bitch," "ho," "white bitch," "white ho," and "ugly white ho." (Def.'s Ex. D, Jones Decl. at ¶ 6).  Till denies making the comments.  (Def.'s Ex. C, 2009 Investigation Report; Pl.'s Ex. 1, Pl.s Dep. at 45).

Ultimately, Price found the accusations against Till to be unsubstantiated.  (Def.'s Ex. E, 10/09/2009 Memo to Pl.).  Price issued Till a memorandum summarizing the allegations and recommending that she abide by company policies.  The memorandum also advised Plaintiff that Price would be monitoring her behavior; and if it was reported that she had violated company policies, she would "be subjected to disciplinary action up to and including termination."  (*Id.*).

### D.      2010 Suspension of Till and Investigation

During the midnight shift on December 31, 2009, Ferguson called Spectrum on the telephone to advise the midnight shift security officer that she would be absent for her upcoming shift.  Security officer Tommy Allen answered the phone, and then transferred the call to Till.

3

Allen then called Ferguson and told her that after Ferguson's phone call with Till, Till came into the control room where he was and said in reference to Ferguson "I can't stand that white bitch" and that she hoped that her "white ass" would be written up. (Def.'s Ex. F, Allen Decl. at ¶ 6). Ferguson then filed a report with Facility Director Jacquelyn Fryer. Fryer later asked Allen to document the language used by Till. In his report, Allen wrote that Till referred to Ferguson as a "white bitch" and that she hoped that her "ass" would be written up. (Def.'s Ex. H, Allen 01/06/2010 Statement). On January 5, 2010, Ferguson filed a grievance against Till, alleging slander and racist remarks. (Def.'s Ex. I, Ferguson 01/05/2010 Grievance).

Till claims that Ferguson complained to her on the phone that Allen told Ferguson that Till was going to write her up or suspend her. Till claims that she then assured Ferguson over the phone that Allen's statements were mere gossip, and thereafter "verbally counseled" Allen for making the alleged comments to Ferguson about Till suspending her. Till denies ever referring to Ferguson as a "white bitch." (Pl.'s Dep. at 45-46).

On January 6, 2010, Till was suspended for a period "not to exceed three scheduled work days" pending an investigation of "alleged prohibited conduct of verbal slander, use of abusive language and unprofessionalism regarding staff." (Def.'s Ex. J, 01/06/2010 Suspension Pending Investigation).

### E.    Till's Heart Attack and Leave of Absence

On January 12, 2010, while still on suspension, Till suffered a heart attack. She then took a medical leave under the FMLA. On January 16, 2010, Till was released

4

from the hospital and called Price to tell him about her hospitalization.  Till claims that Price then stated on the phone "Oh, no, you can't work here.  Have you applied for your social security disability?  Do[es] your doctor know the type of work that you do?" and that he told her that her suspension had been "lifted"  (Pl.'s Dep. at 77-79).  Till claims Price later told her in person on a separate occasion that they could not substantiate anything against her related to the 2010 Suspension.  (*Id.* at 83-84).

### F.     Phone Call from Till to Allen on February 16, 2010

On February 16, 2010 officer Allen reported that while on a medical run with fellow officer Terrence Rodgers, Till called him and yelled profanities at him, accusing him of being "behind the shit with Ferguson" and that she was "going to get [her] mother fucking job back and then we'll see who gets suspended."  (Def.'s Ex. F, Allen Decl. at ¶ 11; Def.'s Ex. M, Allen 02/17/2010 Statement).   Officer Rodgers was able to hear a voice over the phone.  Rodgers signed a statement regarding the incident stating that "the caller was loud and s/o [security officer] Allen could barely get a word in edgewise" and that he "could clearly hear the voice of a female stating that she was going to get her job back, and that it wasn't over until the fat lady sings."  (Def.'s Ex. N, Rodgers 02/25/2010 Statement).

Rodgers later attested separately that he did "not hear the caller identify herself as Alyce Till," that he declined to write at statement about the incident at Allen's request, and that subsequently, Price "requested that I sign a statement" and that he "reluctantly complied because it was a request from my employer."  (Pl.'s Ex. 6, Rodgers Aff. at ¶¶ 15-17).  Till denies having ever made the phone call.  (Pl.'s Dep. at 90).

G.      **Spectrum's Reduction in Force**

On February 22, 2010, Spectrum's Executive Director, Dr. Nelson Griffis, decided to implement a reduction in force (RIF).  (Def.'s Ex. L, Griffis 02/22/2010 Workforce Reduction Memo).  The RIF terminated a total of 13 employees, including Till (to be effective February 28, 2010).  (*Id.*).  Spectrum claims that due to the separate reports by Officer Jones regarding the 2009 investigation into Till and by Officer Allen regarding the 2010 suspension, and because her position of midnight security supervisor at Spectrum's Lincoln Center was to be eliminated, they decided to place Till on the RIF list.  Spectrum also claims that Griffis knew about the alleged incident related to the telephone conversation between Allen and Till before adding her to the RIF list.  (Def.'s Ex. S, Griffis Dep. at 26-27).

H.      **March 1, 2010 Email Between Price and Griffis**

In an email exchange between Price and Griffis on March 1, 2010, Price confirmed with Griffis his receipt of the report of the phone call incident between Till and Allen on February 16, 2010, and stated that "We can add this with the information you already have to solidify the termination when her LOA [leave of absence] exhausts." (Def.'s Ex. O, Price and Griffis 03/01/2010 Email).  Griffis responded by stating that "We can terminate her when she returns or use the workforce reduction for her.  I don't care."  (*Id.*).

I.      **Till's Termination**

On March 11, 2010, Till provided Price with a letter from her doctor releasing her to return to work on March 15, 2010.  (Pl.'s Ex. 10, Pl.'s Return to Work Letter).  Till

6

called Price on March 15, 2010 to confirm her return and Till claims that Price then told her that she was being terminated and stated that "they're going to pass you on and you can get your unemployment."  (Pl.'s Dep. at 93).

At Till's request, Spectrum provided Till with a termination letter, which characterized Till's March 15, 2010 termination as part of the RIF, thus entitling Till to unemployment compensation.  (Def.'s Ex. P, Till Termination Letter informing Till that "Your position as Midnight Shift Security Supervisor will be eliminated.").   A subsequent email exchange between Price and Griffis on March 23, 2010, confirmed this decision so that Till could "move along peacefully" by having her position eliminated as part of the RIF, instead of as a termination.  (Def.'s Ex. Q, Price and Griffis 03/23/2010 Email).

**J.      Security Positions at Spectrum after the RIF and Till's Termination**

When Till took her medical leave, fellow security supervisor Cardell Humphries took over Till's shift, and Spectrum promoted Spectrum security officer Keith Leslie to security supervisor.  (Pl.'s Ex. 2, Griffis Dep. at 22-23).  Neither of these employees was included in the RIF.  (Pl.'s Ex. 18, RIF Notice).  Approximately six months after Till's termination letter, Defendant added yet another security supervisor, increasing the total number from when they terminated Till.  (Pl.'s Ex. 21, Maxwell Promotion Memo).

Thus, Till claims that, contrary to the termination letter, which stated that "Your position as Midnight Shift Security Supervisor will be eliminated" (Def.'s Ex. P, Till Termination Letter), her position was not eliminated.  Instead, Till argues that her position remained filled and the number of security supervisors actually increased after her termination and provides a supporting affidavit from a former Spectrum employee

7

familiar with the facts.  (Pl.'s Ex. 7, L. Moore Aff.)  Spectrum maintains that during the "critical timeframe" it reduced its number of security supervisors from eight to seven.

### K.    Dr. Griffis's Alleged Comments During Company Meetings

Till also presents the affidavits of five former Spectrum employees who testified that Dr. Griffis stated in supervisor and manager meetings that anyone on medical leave should be fired and that their positions would not be held open for them.  (Pl.'s Ex. 3, Holmes Aff.; Pl.'s Ex. 14, Edwards Aff.; Pl.'s Ex. 15, Dortch Aff.; Pl.'s Ex. 16, Livingston Aff.; Pl's Ex. 17, Daffin Aff.).[1]  Griffis denies making such statements and claims that all of the employees that provided affidavits have either been terminated for misconduct, are pursuing independent litigation against Spectrum, or have a close personal relationship with another such person.

## II.    Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A moving party may meet that burden "by 'showing' – that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case."  *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986).  Revised Rule 56 expressly provides that:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

---

[1] Three of these affiants specifically testified that they heard Griffis state "If they're on medical, fire them.  We're not holding their positions."  (Pl.'s Ex. 15, Dortch Aff.; Pl.'s Ex. 16, Livingston Aff.; Pl's Ex. 17, Daffin Aff.).

(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). The revised Rule also provides the consequences of failing to properly support or address a fact:

If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:

(1) give an opportunity to properly support or address the fact;

(2) consider the fact undisputed for purposes of the motion;

(3) grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it; or

(4) issue any other appropriate order.

Fed. R. Civ. P. 56(e). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

When the moving party has met its burden under rule 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industries Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Ultimately a district court must determine whether the record as a whole presents a genuine issue of material fact, *id.* at 587, drawing "all justifiable inferences in the light most favorable to the non-moving party," *Hager v. Pike County Bd. Of Education*, 286 F.3d 366, 370 (6th Cir. 2002).

9

III.    **Analysis**

A.    **Claims of Disability Discrimination Under the ADA and PWDCRA**

Till alleges disability discrimination under the ADA and Michigan's PWDCRA, Mich. Comp. Laws §§ 37.1201 *et seq.*, for discriminating against her because of her disability (Counts VII and IV, respectively).   The Sixth Circuit has held that the "[PWDCRA] substantially mirrors the ADA, and resolution of a plaintiff's ADA claim will generally, though not always, resolve the plaintiff's PWDCRA claim." *Cotter v. Ajilon Servs.*, Inc., 287 F.3d 593, 597 (6th Cir. 2002).   Since Till's claims under the ADA and PWDCRA are essentially the same, both will be analyzed under the ADA framework. As discussed below, Till has established that genuine issues of material fact exist on these claims.

1.    **Till Presents Evidence of Disability Discrimination Under the ADA and Michigan's PWDCRA.**

A plaintiff can prove discrimination under the ADA and Michigan's PWDCRA with direct or circumstantial evidence.   *Monette v. Elec. Data Systems Corp.*, 90 F.3d 1173, 1186 (6th Cir. 1996).   Till claims that she presents direct evidence, or alternatively, presents a prima facie case of disability discrimination using circumstantial evidence. The Court begins with a discussion of Till's "direct" evidence.

a.    **Till Presents Direct Evidence of Disability Discrimination.**

Direct evidence "is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Bhama v. Mercy Mem'l Hosp. Corp.*, No. 09–2193, 2011 WL 1086632, at *9 (6th Cir. Mar. 25, 2011).   Direct evidence "does not require the fact finder to draw any inferences

10

to reach that conclusion." *Id.*   Direct evidence is sufficient to defeat a motion for summary judgment in employment discrimination cases.  *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 511 (2002).

Till's presents two forms of direct evidence of disability discrimination.  First is Price's alleged statement to Till on the phone when he discovered that Till had a heart attack of "Oh, no, you can't work here.  Have you applied for your social security disability?  Do[es] your doctor know the type of work that you do?"  (Pl.'s Dep. at 78). Second are the affidavits of five former Spectrum employees who testified that Dr. Griffis directed in meetings that anyone on medical leave should be fired and that their positions would not be held open for them.  (Pl.'s Pl.'s Ex. 3, Holmes Aff.; Pl.'s Ex. 14, Edwards Aff.; Pl.'s Ex. 15, Dortch Aff.; Pl.'s Ex. 16, Livingston Aff.; Pl.'s Ex. 17, Daffin Aff.).

Despite Defendant's claim that these former employees are all biased against Spectrum for various reasons, the Court finds that Till has presented direct evidence of discrimination under the ADA.   "A facially discriminatory employment policy or a corporate decision maker's express statement of a desire to remove employees in the protected group is direct evidence of discriminatory intent."   *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000).  If true, these statements demonstrate a discriminatory intent in support of Till's claims of disability discrimination by indicating a desire to remove employees with disabilities or employees that took medical leave.

### b.    Alternatively, Till Presents a Prima Facie Case of Disability Discrimination with Circumstantial Evidence.

Even if the Court were to find that Till's proffered evidence is not direct but

11

circumstantial in that it requires a factual inference[2], the Court finds that, viewing the evidence in the light most favorable to Plaintiff, it is sufficient to establish a prima facie case of discrimination under the ADA and Michigan's PWDCRA.  To establish a prima facie case of discrimination under the ADA and Michigan's PWDCRA, Plaintiff must show (1) that she is disabled within the meaning of the ADA and Michigan's PWDCRA; (2) she is otherwise qualified to perform the job's requirements, with or without reasonable accommodations; and (3) she was discharged solely by reason of her disability. *Steward v. New Chrysler*, 415 F. App'x. 632, 641 (6th Cir. 2011) (analyzing the ADA and PWDCRA together).

Spectrum argues that Till cannot establish the second and third elements of her prima facie case because (1) Till repeatedly violated company policies and an employee who violates performance standards cannot be "qualified" under the ADA; and (2) she was not discharged "solely" because of her disability, but because of her repeated use of racially and sexually offensive language towards fellow employees.  Spectrum's arguments are not convincing.

Genuine issues of material fact exist whether Till was terminated solely because of her employment record,[3] because her position was eliminated in a RIF, or because of

---

[2] *See, e.g. Rowan v. Lockheed Martin Energy Systems, Inc.* 360 F.3d 544, 548 (6th Cir. 2004), where the Court held that an employer's broad statements about needing to lower the average age of employees at a plant failed to constitute direct evidence of age discrimination because they were insufficiently tied to the decision to terminate the particular plaintiffs.

[3] Spectrum's 2009 investigation into Till failed to substantiate any of the allegations against her (Def.'s Ex. E, 10/09/2009 Memo to Pl.), and the 2010 investigation may

her disability or a discriminatory practice by Spectrum against employees who take a medical leave.   Viewing the evidence in the light most favorable to Plaintiff, Till has established a prima facie case of disability discrimination under the ADA and Michigan's PWDCRA.   Because she has, the *McDonnell Douglas* burden-shifting test is triggered. *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 572 (6th Cir. 2000).

### 2.   McDonnell Douglas Burden Shifting Test

If a plaintiff establishes a prima facie case of discrimination with circumstantial evidence, the *McDonnell Douglas* burden-shifting test applies and the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the termination.[4] Then, the burden shifts back to the plaintiff to prove that the defendant's stated reason for termination is a pretext for discrimination based on the plaintiff's disability.   *Martin v. Barnesville Exempted Vill. Sch. Dist. Bd. of Educ.*, 209 F.3d 931, 934 (6th Cir. 2000); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

### a.   Spectrum Offers a Legitimate, Non-Discriminatory Reason for Till's Termination.

Spectrum presents several legitimate, non-discriminatory reasons for Till's discharge -- Till was terminated because of her repeated acts of making racially and

---

have come to the same conclusion.   (Pl.'s Dep. at 83-84).   Till also disputes that the alleged threatening phone call to Officer Allen ever took place (Pl.'s Dep. at 90) and Office Rodgers's testimony regarding the phone call failed to implicate Till (Def.'s Ex. N, Rodgers 02/25/2010 Statement).   While Rodgers's testimony does not eliminate the possibility that Till made the phone call, it does raise further questions of material fact regarding this incident.

[4] If the plaintiff presents direct evidence, the *McDonnel Douglas* analysis does not apply.   *Swierkiewicz*, 534 U.S. at 511.

sexually offensive comments about subordinate employees, for threatening a subordinate employee due to his support of a fellow employee, and because her position was being eliminated as part of a RIF.  The burden thus shifts back to Plaintiff to prove that Defendant's stated reasons for her termination were a pretext for discrimination because she was disabled.

> **b.    Material Issues of Fact Exist Whether Spectrum's Stated Reasons for Till's Termination are Pretext.**

A plaintiff can demonstrate evidence of pretext in three ways:  "(1) that the proffered reasons had no basis in fact; (2) that the proffered reasons did not actually motivate the action; or (3) that they were insufficient to motivate the action." *Kocsis v. Multi-Care Mgmt., Inc.*, 97 F.3d 876, 883 (6th Cir. 1996).  Till argues that Spectrum's stated reasons are pretext because they had no basis in fact, did not actually motivate its decision, and numerous issues of material fact exist concerning Spectrum's true motive.

Regarding Spectrum's claim that Till violated company policy by making racially and sexually offensive comments to Ferguson, Till presents evidence that (1) Spectrum's internal investigations for both the 2009 Incident and 2010 Suspension failed to substantiate these claims (Pl.'s Ex. 8, 10/09/2009 Memo to Pl.; Pl's Dep. at 83-84), (2) Spectrum did not cite the alleged policy violations when it fired her (Pl.'s Ex. 11, Till Termination Letter), and (3) the emails between Price and Griffis did not indicate that they were terminating Till due to policy violations (Pl.'s Ex. 19, Price/Griffis Emails).

Regarding Spectrum's claim that Till violated company policy by making a threatening phone call to Officer Allen, Till testifies in her deposition that the phone call

14

never took place (Pl.'s Dep. at 90) and points out that in his statement, Rodgers, who was next to Allen when Till allegedly called him, did not identify the voice on the phone as Till's and did not testify that anyone made threats on the phone.   (Def.'s Ex. N, Rodgers 02/25/2010 Statement).

Finally, as to Spectrum's claim in its termination letter that Till's position was being eliminated, Till presents evidence that when she took her leave of absence, fellow security supervisor Cardell Humphries took over Till's shift, and Spectrum promoted Spectrum security officer Keith Leslie to the position of security supervisor.   (Pl.'s Ex. 2, Griffis Dep. at 22-23, 35).   Neither of these employees was included in the RIF.   (Pl.'s Ex. 18, RIF Notice).   Approximately six months after Till's termination letter, Defendant added yet another security supervisor, increasing the total number from when they terminated Till.   (Pl.'s Ex. 21, Maxwell Promotion Memo).

Till's arguments raise issues of material fact whether Spectrum's stated reasons for her termination are pretext for disability discrimination.   While Spectrum claims it terminated Till due to policy violations, material issues of fact exist around the alleged violations:   It is undisputed that the 2009 investigation into Till's conduct failed to substantiate any of the allegations against her.   (Def.'s Ex. E, 10/09/2009 Memo to Pl.). The same result could have occurred with the 2010 Investigation.[5]   Moreover, the

_____

[5] Till testified in her deposition that Price told her that they could not substantiate anything against her in the 2010 investigation.   (Pl.'s Dep. at 83-84).   Till also provides the affidavit of former Spectrum security officer Wendy Doyle stating that Spectrum Human Resources Generalist Katrina Jones stated the same.   (Pl.'s Ex. 12, Doyle Aff. at ¶ 9-10).   Spectrum rightfully argues that Doyle's affidavit regarding Jones' statement lacks personal knowledge as required by Fed. R. Civ. P. 56(c)(4).   (Def.'s Reply at 1-2).

combination of Till's deposition testimony (Pl.'s Dep. at 90) and Rodgers's Statement (Def.'s Ex. N, Rodgers 02/25/2010 Statement), while not completely eliminating the possibility that Till made the alleged threatening phone call to Officer Allen, do present issues of material fact about the caller, the content, and the nature of that call.

Further, Till has presented evidence that conflicts with Defendant's claim that Till's position was eliminated as part of the RIF, as Spectrum argues and as stated in Till's termination letter.[6]   While Spectrum argues that during the critical timeframe it reduced its number of security supervisors from eight to seven (Def.'s Ex. V, Griffis Decl. at ¶ 2), Till presents evidence that supports her contention that her position remained filled at all times by various Spectrum personnel and thus her position was not eliminated due to a RIF.

Finally, while Fryer's initial request for termination came before Till's heart attack, a final termination required the approval of Spectrum's director and HR department. (Def.'s Ex. J, Suspension Notice; Pl.'s Ex. 2, Griffis Dep. at 10).   The final decision to

_____

However, the Court need not solely rely on the Doyle Affidavit in light of Till's deposition testimony cited above.

[6] Till presents evidence that when she took her leave of absence, fellow security supervisor Cardell Humphries took over Till's shift, and Spectrum promoted Spectrum security officer Keith Leslie to the position of security supervisor.  (Pl.'s Ex. 2, Griffis Dep. at 22-23, 35).  Neither of these employees was included in the RIF (Pl.'s Ex. 18, RIF Notice), meaning the number of security supervisors remained the same before and after the RIF.  Approximately six months after Till's termination letter, Defendant added yet another security supervisor, thus increasing the total number from when they terminated Till.  (Pl.'s Ex. 21, Maxwell Promotion Memo).  Based on this evidence, it appears that Till's position was not eliminated but rather remained filled at all times.

16

terminate Till was made between Price and Griffis on March 1, 2010, *after* Till's heart attack and during her leave of absence.  (Def.'s Ex. O, Price and Griffis 03/01/2010 Email).  In this email exchange, Price confirms his receipt to Griffis of information related to the alleged threatening phone call from Till to Allen and writes that "We can add this with the information you already have to solidify the termination when her LOA exhausts."  (*Id.*).  Griffis responds by stating that "We can terminate her when she returns or use the [RIF].  I don't care."  (*Id.*).  Thus, Spectrum's claim that the termination decision pre-dated Till's heart attack is incorrect.

Given the lack of substantiation in Spectrum's investigations against Till; the affidavits of five former Spectrum employees attesting that Dr. Griffis gave directives in supervisor and manager meetings that anyone on medical leave should be fired and that their jobs should not be held open;[7] the uncertainty whether Till's position was eliminated because of a RIF as Spectrum stated in her termination letter or whether Till was terminated for violating company policies as Spectrum now argues; and the fact that the decision to terminate Till occurred after she began her leave of absence, this Court concludes that material issues of fact exist whether Spectrum's stated reasons for terminating Till were a mere pretext for disability discrimination.

### c.    Spectrum Cannot Rely on the Honest Belief Rule

---

[7]  As discussed above, Spectrum challenges the credibility of these employees. However, at summary judgment, the Court may not make credibility judgments and must draw "all justifiable inferences in the light most favorable to the non-moving party." *Hager*, 286 F.3d at 370.

Spectrum argues that Till's arguments are insufficient to raise an issue of material fact because of the "honest belief" or "business judgment" rule, which holds that an employer is not liable for employment discrimination "as long as [it] has an honest belief in its proffered nondiscriminatory reason."  *Michael v. Caterpillar Fin. Services Corp.*, 496 F.3d 584, 598 (6th Cir. 2007).  To rely on this rule, "the employer must be able to establish its reasonable reliance on the particularized facts that were before it at the time the decision was made."  *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 708 (6th Cir. 2006).

> The key inquiry is whether the employer made a reasonably informed and considered decision before taking an adverse employment action….
>
> Although courts should resist attempting to micro-manage the process used by employers in making their employment decisions, neither should they blindly assume that an employer's description of its reasons is honest.  When the employee is able to produce sufficient evidence to establish that the employer failed to make a reasonably informed and considered decision before taking its adverse employment action…then any reliance placed by the employer in such a process cannot be said to be honestly held.

*Smith v. Chrysler Corp.*, 155 F.3d 799, 807 (6th Cir. 1998).

Till has produced sufficient evidence that Spectrum failed to make a reasonably informed and considered decision before terminating her employment and thus cannot shield itself from liability under the "honest belief" rule.  The Court finds that a reasonable juror could conclude that Spectrum did not reasonably rely on the particularized facts before it in making its allegedly non-discriminatory termination decision, as is required to invoke the honest belief rule.  *See Wright*, 455 F.3d at 708.

18

Material issues of fact exist as to whether Till violated company policy and whether Till's position was eliminated as a result of a RIF.  While Spectrum claims it honestly believed that it was terminating Till based on the allegation that Till threatened Officer Allen, it failed to indicate this in its termination letter to Till where it characterized Till's termination as part of the RIF in which her position was eliminated.  Moreover, questions remain whether Till's position was actually eliminated as part of that RIF. This is because Spectrum shifted its security personnel to fill Till's position in her absence (Pl.'s Ex. 2, Griffis Dep. at 22-23, 35), these personnel were not included in the RIF (Pl.'s Ex. 18, RIF Notice), and Spectrum added an additional security supervisor approximately six months after Till's termination.   (Pl.'s Ex. 21, Maxwell Promotion Memo).  This evidence questions whether Till's position was truly eliminated through the RIF, as it appears that her position was filled at all times and that the number of security supervisors at Spectrum actually increased in 2010.

For all these reasons, the Court denies Defendant's motion for summary judgment as to Till's claims under the ADA and Michigan's PWDCRA.  The Court now considers Till's FMLA claims.

**B.    Claims of FMLA Violations – Interference/Retaliation**

Till alleges that Spectrum violated the FMLA by denying her return to work after her FMLA leave (Count I).  Till asserts claims of interference and retaliation under the FMLA.  Till presents sufficient evidence to create genuine issues of material fact related to these claims.

**1.    Interference**

19

A plaintiff has an interference cause of action under the FMLA when an employer "interfere[s] with, restrain[s] or den[ies] the exercise of or attempt to exercise, any right provided under [the FMLA]." 29 U.S.C. § 2615(a)(1). To prevail on an interference claim, a plaintiff must show that (1) he or she is an eligible employee, (2) the defendant is an employer, (3) the employee was entitled to leave under the FMLA, (4) the employee gave the employer notice of the intention to take leave, and (5) the employer denied the employee FMLA benefits to which he or she was entitled. *Cavin v. Honda of Am. Mfg., Inc.*, 346 F.3d 713, 719 (6th Cir. 2003).

Under the interference theory, "[t]he issue is simply whether the employer provided its employee the entitlements set forth in the FMLA - for example, a twelve-week leave or reinstatement after taking a medical leave." *Edgar v. JAC Prods.*, Inc., 443 F.3d 501, 507-08 (6th Cir. 2006). The employer's intent is not a relevant part of the interference inquiry under § 2615, and the Court need not apply the *McDonnell Douglas* burden-shifting in such cases. *Id.* at 507-08. However, the entitlement to FMLA rights is not absolute, as an employer does not interfere with an employee if the employer had another legitimate reason to terminate the employee that was unrelated to the exercise of FMLA rights. *Id.* at 508.

Till claims that Spectrum is liable under the FMLA because it did not restore Till to her position or an equivalent one as required under 29 U.S.C. § 2614(a)(1), and that this constituted an interference with Till's rights under the FMLA. Spectrum argues that it terminated Till due to a legitimate business reason apart from her FMLA leave (her violation of company policies by using racially and sexually offensive language, her

20

threat against Officer Allen on the phone, and the elimination of her position under the RIF), and is thus not liable.

It is true that an employee may be lawfully terminated and precluded from exercising his or her FMLA rights "if the dismissal would have occurred regardless of the employee's request for or taking of FMLA leave." *Arban v. W. Pub. Corp.*, 345 F.3d 390, 401 (6th Cir. 2003). However, as discussed in relation to Till's ADA claim, Till has shown that material issues of fact exist concerning Spectrum's true motive for terminating Till: the investigations into Till's 2009 and potentially her 2010 incident were unsubstantiated (Def.'s Ex. E, 10/09/2009 Memo to Pl.; Pl.'s Dep. at 83-84), there is evidence questioning the nature, content, and caller involved in the alleged threatening phone call from Till to Allen (Pl.'s Dep. at 90; Def.'s Ex. N, Rodgers 02/25/2010 Statement), and it is unclear whether Till's position was truly eliminated as part of the RIF, as Spectrum Stated in Till's termination letter. (Pl.'s Ex. 2, Griffis Dep. at 22-23, 35; Pl.'s Ex. 21, Maxwell Promotion Memo). In addition, Till has presented statements from numerous employees testifying that Dr. Griffis directed in supervisor and manager meetings that anyone on medical leave should be fired and that their jobs would not be held open while on leave. (Pl.'s Ex. 3, Holmes Aff.; Pl.'s Ex. 14, Edwards Aff.; Pl.'s Ex. 15, Dortch Aff.; Pl.'s Ex. 16, Livingston Aff.; Pl's Ex. 17, Daffin Aff.). Accordingly, Defendant is not entitled to summary judgment on this FMLA claim.

### 2.    Retaliation

To establish a prima facie case of retaliatory discharge under the FMLA, Plaintiff must show that (1) she availed herself of a protected right under the FMLA by notifying

21

Defendant of her intent to take leave, (2) she suffered an adverse employment action, and (3) there is a causal connection between Plaintiff's exercise of an FMLA right and the adverse employment action.   *Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309, 314 (6th Cir. 2001).

There is no dispute as to the first two elements of Plaintiff's prima facie case of retaliation.  As to the third, Till argues that the requisite causal connection is established because she was terminated the very day she was to return to work on March 15, 2010. Till also supports her retaliation claim with affidavits from five former Spectrum employees averring that Dr. Griffis gave directives to Spectrum managers that anyone on medical leave should be terminated and his statement that the positions of employees on medical leave would not be held open for them.  (Pl.'s Pl.'s Ex. 3, Holmes Aff.; Pl.'s Ex. 14, Edwards Aff.; Pl.'s Ex. 15, Dortch Aff.; Pl.'s Ex. 16, Livingston Aff.; Pl's Ex. 17, Daffin Aff.).

Till asserts that Griffis's statements constitute direct evidence of retaliation, or that alternatively, they constitute sufficient circumstantial evidence to meet her burden under the *McDonnel Douglas* test, relying on her previous pretext arguments under her disability claims.  Spectrum argues, as it did on Till's interference claim, that Till was terminated for legitimate business reasons.

### a.    Till Presents Direct Evidence of FMLA Retaliation.

The Court finds that Till has presented direct evidence of retaliation.  Direct evidence "must establish not only that the plaintiff's employer was predisposed to discriminate on the basis of [the FMLA], but also that the employer acted on that

22

predisposition." *Clark v. Walgreen Co.*, 09-6284, 2011 WL 2023432 (6th Cir. May 24, 2011).  Till's proffered direct evidence meets this test because Dr. Griffis's statements demonstrated a predisposition to discriminate against those on medical leave.  Because there is no factual inference that is required to be drawn from these statements to conclude that Spectrum discriminated against Till for taking her medical leave, they constitute direct evidence of FMLA retaliation.  *Bhama*, 2011 WL 1086632, at *9.

### b.   Alternatively, Till Presents a Prima Facie Case of FMLA Retaliation with Circumstantial Evidence.

Even if the Court were to find that Till proffered only circumstantial evidence, the Court finds that the evidence Till presents establishes a prima facie case of FMLA retaliation, thus triggering the *McDonnell Douglas* analysis that Courts apply under FMLA retaliation claims.   *Skrjanc*, 272 F.3d at 315.   Establishing a case of discriminatory intent under the FMLA "is not difficult: [Plaintiff] must merely present some evidence of 'circumstances which give rise to an inference of unlawful discrimination.'"  *Bell v. Prefix, Inc.*, 321 F. App'x. 423, 426 (6th Cir. 2009) (quoting *Bryson v. Regis Corp.*, 498 F.3d 561, 570 (6th Cir. 2007)).

Under the *McDonnell Douglas* burden-shifting analysis, Spectrum offers legitimate non-discriminatory business reasons for terminating Till.   However, Till presents evidence showing that material issues of fact exist whether Spectrum's reasons were a pretext for FMLA retaliation. (Pl.'s Ex. 3, Holmes Aff.; Pl.'s Ex. 14, Edwards Aff.; Pl.'s Ex. 15, Dortch Aff.; Pl.'s Ex. 16, Livingston Aff.; Pl's Ex. 17, Daffin Aff.).   Accordingly, the Court denies Spectrum's motion as to Till's FMLA retaliation claim.

**C.      Claims of Sex Discrimination Under Title VII and the ELCRA**

Till alleges sex discrimination under Title VII (Count VI) and Michigan's ELCRA (Count III).   Because Till has not and cannot establish a prima facie case of sex discrimination, this Court grants Spectrum's motion for summary judgment on these claims.

Claims of discrimination brought pursuant to the ELCRA are analyzed under the same evidentiary framework as similar claims brought under Title VII, and Michigan courts follow federal case law to interpret them. *Jackson v. Quanex Corp.*, 191 F.3d 647, 658 (6th Cir.1999).  Thus, Till's sex discrimination claims will be analyzed together.

To establish a prima facie case of sex discrimination under Title VII, a plaintiff must show that she was (1) a member of the protected class, (2) subject to an adverse employment action, (3) qualified for the job, and (4) treated differently than similarly situated male employees for the same or similar conduct.  *Humenny v. Genex Corp.*, 390 F.3d 901, 906 (6th Cir. 2004).  A plaintiff may establish a prima facie case using either direct or circumstantial evidence.  (*Id.*).  If a plaintiff presents circumstantial evidence only, as Till does, the *McDonnell Douglas* burden-shifting analysis applies.

Till's sex discrimination claims rest on the allegations that she is a woman, was terminated, and was allegedly replaced by a 38 year old man.  Spectrum argues that Till cannot establish the third and fourth elements of her prima facie case, that is, that she was otherwise qualified for the position or that she was treated differently than similarly situated male employees.

Spectrum's argument as to the fourth element of Till's prima facie case is

24

persuasive.  To show that she was treated differently than similarly situated male employees for the same or similar conduct, Till must show that "all relevant aspects" of her employment were "nearly identical" to those of a similarly situated male employee. *Humenny*, 390 F.3d at 906 (citing *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 928 (6th Cir. 1999)).  In addition, Till is required to show that the allegedly similarly situated male employee "must have dealt with the same supervisor, have been subject to the same standards, and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it."  *Tuttle v. Metro. Gov't of Nashville*, 474 F.3d 307, 317 (6th Cir. 2007) (quoting *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir.1998)).

Till's claim that she was replaced by a 38 year old male security officer is insufficient.  As Spectrum conclusively shows, Till was not the only female security supervisor at Spectrum (despite her unsubstantiated belief to the contrary), and members of both sex were included in the RIF (Def's Ex. R, Spectrum's Responses to Till's Interrogatories at ¶ 3; Pl.'s Ex. L, Griffis 02/22/2010 Workforce Reduction Memo). Because Till has not and cannot establish her prima facie case of sex discrimination, the Court need not proceed with the *McDonnell Douglas* burden-shifting analysis. Spectrum's motion for summary judgment is granted as to her sex discrimination claims.

### D.   Claims of Age Discrimination Under the ADEA an ELCRA

Lastly, Till alleges age discrimination under the ADEA (Count V) and the ELCRA (Count II).   Because Till has not presented any evidence showing that age

discrimination played a role in her termination, Spectrum's motion for summary judgment on these claims is granted.

State ELCRA claims are analyzed under the same standards as federal ADEA claims. *Geiger v. Tower Automotive*, 579 F.3d 614, 626 (6th Cir. 2009). Thus, Plaintiff's claims under the ADEA and Michigan's ELCRA will be analyzed together. Plaintiff can meet her burden of establishing a prima facie case by either presenting direct or circumstantial evidence of age discrimination. *Graham v. Ford*, 604 N.W.2d 713, 717 (Mich. Ct. App.1999). To establish a prima facie case of age discrimination, Till must show that (1) she was at least 40 years old at the time of the alleged discrimination; (2) she suffered an adverse employment action; (3) she was qualified for the position; and (4) a comparable non-protected person was treated better, or Plaintiff was replaced by someone outside of the protected class. *Tuttle v. Metro. Gov't of Nashville*, 474 F.3d 307, 317 (6th Cir. 2007).

Till claims that she has established a prima facie case of age discrimination because she is a female, was terminated, was performing satisfactorily, and was replaced by a 38 year old male. (Pl.'s Mot. at 28). Because Till's termination may have occurred as part of a workforce reduction (RIF), she faces a more stringent test to establish her prima facie case and must present "additional, direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons." *Barnes v. GenCorp., Inc.*, 896 F.2d 1457, 1465 (6th Cir.1990). *See also Town v. Michigan Bell Telephone Co.*, 568 N.W.2d 64, 71 (Mich. 1997) ("A layoff in the context of an overall workforce reduction provides a

nondiscriminatory explanation for the plaintiff's discharge…the presumption of the prima facie case - that the employee's discharge was discriminatory - evaporates and is no longer relevant."); *Geiger*, 579 F.3d at 623 ("If the termination arises as part of a work force reduction, this court has modified the fourth element to require…additional evidence [of discrimination].").

Even if Till establishes a prima facie case of age discrimination, the burden then shifts to Spectrum to assert a legitimate, non-discriminatory reason for terminating Till under the *McDonnell Douglas* burden-shifting analysis. Spectrum relies on its reasons presented for Till's other claims – that it terminated Till due to her violations of company policies and the RIF elimination of her position.

The burden thus shifts back to Till to show that "the employer's proffered reasons…were a mere pretext for discrimination." *Lytle v. Malady*, 579 N.W.2d 906, 915 (Mich. 1998). Till relies on her previous pretext arguments to satisfy her burden on pretext. While these arguments show that Till's disability or FMLA leave might have motivated Spectrum's decision to terminate her, Till has not presented any evidence showing that age bias played a role in Spectrum's decision. Accordingly, Spectrum's motion for summary judgment is granted as to Plaintiff's age discrimination claims.

## IV.    Conclusion

For the above-stated reasons Spectrum's motion for summary judgment is DENIED as to Till's claims of disability discrimination under the ADA and PWDCRA (Counts VII and IV, respectively) and Till's claims of FMLA violations (Count I), and GRANTED as to Till's claims of sex discrimination under Title VII and the ELCRA

(Counts VI and III, respectively) and Till's claims of age discrimination under the ADEA and ELCRA (Counts V and II, respectively).

<u>s/Nancy G. Edmunds</u>
Nancy G. Edmunds
United States District Judge

Dated:  August 1, 2011

I hereby certify that a copy of the foregoing document was served upon counsel of record on August 1, 2011, by electronic and/or ordinary mail.

<u>s/Carol A. Hemeyer</u>
Case Manager